**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHANCELYN WALKER, individually and on behalf of all others similarly situated,<br>3214 Chesley Avenue<br>Parkville, Maryland 21234<br><br>Plaintiff,<br><br>v.<br><br>HOMEFIX CORPORATION, a Maryland corporation,<br>14880 Sweitzer Lane, Suite B<br>Laurel, Maryland 20707<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Chancelyn Walker ("Walker" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant HomeFix Corporation ("HomeFix" or "Defendant") to: (1) stop HomeFix's practice of sending text message telephone solicitations to the cellular telephones of consumers who have placed their numbers on the National Do Not Call Registry without first securing the consumers' prior express invitation or permission; (2) enjoin HomeFix from continuing to send such text message solicitations to consumers who did not provide their prior express invitation or permission to receive them; (3) stop HomeFix's practice of sending telephone solicitations, in the form of text messages, to the cellular telephones of Maryland residents using an automated system for the selection or dialing of telephone numbers without first securing prior express written consent as required by Maryland's "Stop The Spam Calls Act", Md. Code Ann., Comm. Law § 14-4501 *et seq*., ("SSCA"); (4) stop HomeFix's practice of failing to transmit the required Caller ID information when placing its solicitation text

messages; and (5) obtain redress for all persons injured by Defendant's conduct. Plaintiff seeks an award of statutory damages pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA") and the SSCA for herself and for the members of the alleged Classes, plus court costs and reasonable attorneys' fees.

Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Walker is a natural person and citizen of Maryland. Plaintiff resides in Parkville, Baltimore County, Maryland.

2. Defendant is a corporation incorporated and existing under the laws of the State of Maryland with its headquarters located at 14880 Sweitzer Lane, Suite B, Laurel, Maryland 20707

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute. The Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq*. because the classes consist of over 100 people, there is minimal diversity, and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply. This Court has supplemental subject-matter jurisdiction over the ancillary and pendent state law claim under 28 U.S.C. § 1367.

4. The Court has personal jurisdiction over Defendant because it is headquartered in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant and Plaintiff both reside in this District and a substantial part of the events or omissions giving rise to the claim occurred and/or emanated from this District.

**FACTUAL ALLEGATIONS**

6. Defendant HomeFix bills itself as a "home-improvement outfit offering installation services for roofing, siding, doors, and windows, plus solar energy systems."

7. Plaintiff is, and was at all times relevant, the subscriber and sole customary user of a personal cellular telephone number ending in 9523.

8. Plaintiff is, and was at all times relevant, a resident and citizen of Maryland.

9. Plaintiff uses (and has used at all times relevant) this number exclusively for personal, non-business purposes. In short, it is her residential phone number.

10. The number was not issued by her employer, is not in her employer's name, and is not used for business purposes.

11. Plaintiff personally registered this number on the National Do Not Call Registry on or around March 15, 2025.

12. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

13. The National Do Not Call ("DNC") Registry allows consumers to register their residential telephone numbers and thereby indicate their desire not to receive telephone

solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. As part of its business practice, Defendant sends solicitation text messages.

16. Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that repeatedly sends unsolicited telemarketing text messages to consumers' cellular telephones, including to those whose numbers are on the National Do Not Call Registry who did not provide prior express invitation or permission to receive such messages.

17. Worse yet, in making the autodialed text messages at issue in this case, Defendant and/or its agents utilized an automated system for the selection or dialing of telephone numbers without first securing the recipient's prior express written consent under the SSCA. Specifically, the telephone dialing equipment utilized by Defendant and/or its agent, which is substantially-similar to a predictive dialer, stored and dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. The text messages were stored and sent *en masse* and without the consent of Plaintiff another members of the Class to receive such text message marketing spam.

18. In March and May 2025, Walker received a series of unsolicited text messages from HomeFix, all sent from the number 301-822-2879.

19. HomeFix's name was not transmitted as Caller ID information. Screenshots

evidencing receipt of the messages and their content and produced below:


















20. The texts were all sent by HomeFix for purposes of promoting and soliciting Walker to purchase HomeFix's products and services. Each text displayed only the phone number and not the name of the telemarketer on the Caller ID—the name was not transmitted.

21. Simply stated, HomeFix was texting Plaintiff for the purpose of promoting and attempting to sell its home improvement products and services.

22. The messages also evidence that HomeFix knew its messages were disruptive, intrusive, and annoying—the March 19th message said in part "I get it, I'm hounding you . . ."

23. Walker does not use her personal residential cellphone number at issue in this case for business purposes.

24. Walker has never provided her cellular telephone number to Defendant.

25. Walker never had a business relationship with Defendant.

26. Defendant did not obtain SSCA-compliant prior express written consent from Walker.

27. Defendant was, and is, aware that the above-described text messages were sent to consumers like Plaintiff who did not consent to receive them.

28. By places the unauthorized text messages alleged herein, Defendant has caused consumers actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the receipt of such messages, in addition to the wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such messages, in the form of the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendant sent the messages knowing that they interfered with Plaintiff and the other class members' use and enjoyment of, and the ability to access, their cellphones, including all related data, software, and hardware

components.

29. To redress these injuries, Plaintiff, on behalf of herself and Classes of similarly situated individuals, brings this suit under the TCPA and SSCA. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized telemarketing activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

30. In accordance with Fed. R. Civ. P. 23(b)(2) and (b)(3) Plaintiff brings this action on behalf of herself and Classes defined as follows:

> **Autodialed Call Class:** All persons in Maryland who (1) from the date three years prior to the filing of this Complaint through the date notice is sent to the class members; (2) Defendant, or a third person acting on behalf of Defendant, texted; (3) on the person's cellular telephone; (4) for the same purpose Plaintiff was texted, i.e., to solicit the potential sale of Defendant's products and services; (5) using the same equipment used to text Plaintiff; and (6) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to text Plaintiff, or where there is no alleged prior express consent.

> **National Do Not Call Registry Class**: All persons throughout the United States (1) to whom HomeFix delivered, or directed to be delivered, more than one text message within a 12 month period for purposes of encouraging the purchase of a product or service from HomeFix, (2) where the person's telephone number had been registered with the National Do Not Call Registry for at least thirty (30) days before HomeFix delivered or directed to be delivered at least two of the text messages within the 12-month period, (3) from four-years prior to the filing of the initial complaint in this action through the date notice is disseminated to a certified class, and (4) for whom HomeFix claims supposed prior express permission or invitation to send the texts was obtained in the same manner as HomeFix claims supposed prior express permission or invitation was obtained from the named plaintiff.

> **National Caller ID Class:** All persons in the United States who, from four (4) years prior to the filing of this action through the date notice is sent to the Class: (1) received more than one text message or telephone call from or on behalf of the defendant HomeFix; (2) on their cellular telephone; (3) for the same purpose for which HomeFix (or its agent) contacted the named plaintiff; and (4) where

HomeFix's name was not transmitted to the called party as caller identification information.

**Maryland Caller ID Class:** All persons in Maryland who, from three (3) years prior to the filing of this action through the date notice is sent to the Class: (1) received more than one text message from or on behalf of the defendant HomeFix; (2) on their cellular telephone; (3) for the same purpose for which HomeFix (or its agent) contacted the named plaintiff; and (4) where HomeFix's name was not transmitted to the called party as caller identification information.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the need to amend the class definition following discovery into the scope of the classes, the manner by which the Plaintiff supposedly consented to receipt of the texts, the technology and equipment used to place the text message calls, and the identity of any other persons who should be included as party defendants.

31. **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant's agents placed telemarketing text message calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through reference to objective criteria, including Defendant's business records, consumer phone records, and other objective evidence to be gained in discovery.

32. **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant, via its agents, systematically sent text messages to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone messages;

(c) Whether the text messages were sent using an automated system for the selection or dialing of telephone numbers;

(d) Whether Defendant and/or their agents sent the texts at issue;

(e) Whether Defendant and/or their telemarketers systematically sent telemarketing texts to persons who did not previously provide Defendant with prior express written permission or invitation;

(f) Whether the texts were for telemarketing purposes and/or constitute telephone solicitations;

(g) Whether Defendant and/or their telemarketers systematically failed to transmit the telemarketer and/or seller's name as Caller ID information; and

(h) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

33. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes and, together with the other Class members, suffered essentially the same harm and damages as a result of Defendant's uniform wrongful

conduct—namely its agent's repeated placement of unlawful telemarketing text messages.

34. **Fair and Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA for autodialed and telephone calls and similar cases. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

35. **Conduct Similar Towards All Class Members Under Rule 23(b)(2)**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the class members and making final injunctive relief appropriate with respect to the Classes as two respective wholes. Defendant's practices challenged in this lawsuit apply to and affect the class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

36. **Superiority & Manageability Under Rule 23(b)(3)**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to

all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court for each of the Classes. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of Md. Code Ann., Comm. Law § 14-4501 *et seq*.,**
**(On behalf of Plaintiff and the Autodialed Call Class)**

37. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38. Defendant's agents made unsolicited and unwanted autodialed telemarketing text messages to telephone numbers belonging to Plaintiff and the other Maryland-resident members of the Autodialed Call Class—without their prior express written consent—in an effort to sell Defendant's products and services.

39. The texts were made either directly by, or on behalf of Defendant, and were sent for Defendant's benefit. Defendant knowingly received the benefits of these text message calls.

40. Defendant and its agents failed to obtain any prior express written consent that included, as required by Md. Code Ann., Comm. Law § 14-4501(d):

> **(d)** "Prior express written consent" means a written agreement that:
> **(1)** Bears the signature of the called party;
> **(2)** Clearly authorizes the person making or allowing the placement of a telephone solicitation by telephone call, text message, or voicemail to deliver or cause to be delivered to the called party:
> **(i)** A telephone solicitation using an automated system for the selection or dialing of telephone numbers;
> **(ii)** The playing of a recorded or artificial voice message when a connection is completed to a number called; or
> **(iii)** The transmission of a prerecorded voicemail; and
> **(3)** Includes:
> **(i)** The telephone number to which the signatory authorizes a telephone solicitation to be delivered; and
> **(ii)** A clear and conspicuous disclosure informing the called party that:

> **1.** By executing the agreement, the called party authorizes the person making or allowing the placement of a telephone solicitation to deliver or cause to be delivered a telephone solicitation to the called party using:
> **A.** An automated system for the selection or dialing of telephone numbers; or
> **B.** The playing of a recorded message when a connection is completed to a number called; and
> **2.** The called party is not required to directly or indirectly:
> **A.** Sign the written agreement; or
> **B.** Agree to enter into the agreement as a condition of purchasing any property, goods, or services.

41. The messages were all sent using an automated system for the selection or dialing of telephone numbers.

42. Defendant failed to secure prior express consent from Plaintiff that authorized HomeFix to send her a telephone solicitation using an automated system for the selection or dialing of telephone numbers.

43. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone text messages on their cellular phones, lost data, and other damages, and, under Md. Code Ann., Comm. Law § 14-4503(a)(2):are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the SSCA. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to the statute, treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Call Class.

**SECOND CAUSE OF ACTION**

**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (On behalf of Plaintiff and the National Do Not Call Registry Class)**

44. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

45. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o

person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

47. HomeFix violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Class members whose numbers were registered on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48. HomeFix violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Class received more than one text message call in a twelve-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

49. As a result of Defendant's conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## <u>THIRD CAUSE OF ACTION</u>

**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (On behalf of Plaintiff and the National Caller ID Class)**

51. Walker incorporates each of the above-pleaded allegations, facts, and statements

as if fully set forth herein.

52. The TCPA's implementing regulations provide in part that:

> Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.
> (1) For purposes of this paragraph, caller identification information must include either CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer.

47 C.F.R. § 64.1601(e).

53. "Caller identification information" means "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service." 47 C.F.R. 64.1600.

54. "Caller identification service" means "any service or device designed to provide the user of the service or device with the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service."

55. HomeFix failed to transmit the name of the telemarketer as part of the caller identification information when placing the texts to Walker and the Caller ID Class.

56. This Caller ID service (transmission of the name of the telemarketer) was, on information and belief, available to HomeFix by its carrier.

57. By not transmitting the name of the telemarketer despite this service being available, Defendant has violated the TCPA for each text placed by it or on its behalf where the name of the telemarketer was not transmitted as part of the caller identification information.

58. There is a private right of action under this regulation, pursuant to 47 U.S.C. § 227(c)(5). *See Donbronski v. Selectquote Ins. Servs.*, Case No. 2:23-cv-12597, 2025 U.S. Dist.

LEXIS 54413 (E.D. Mich. Mar. 25, 2025).

59. This requirement applies to text messages. *Newell v. JR Capital, LLC*, 2025 U.S. Dist. LEXIS 136118, at *21 (E.D. Pa. July 16, 2025) ("telemarketing text messages must comply with § 64.1601(e)'s caller ID requirements.")

60. Moreover, nothing in the regulation allows a company to circumvent the Caller ID requirements by mentioning the company name in the body of the text message. A consumer need-not open unsolicited text messages in search of the name of the texter. Allowing such an exception is akin to a company circumventing the Caller ID rules for voice calls by announcing themselves upon the call connecting—this is not the rule.

61. As a result of Defendant's unlawful conduct, and/or the conduct of Defendant's agents on or for Defendant's behalf, Plaintiff and the members of the National Caller ID Class are entitled, under Section 227(c)(5)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each such violation of the TCPA.

## FOURTH CAUSE OF ACTION
**Violation of Md. Code Ann., Comm. Law § 14-4501 *et seq*.**
**(On behalf of Plaintiff and the Maryland Caller ID Class)**

62. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63. Md. Code Ann., Comm. Law § 14-4502(b)(1) states that "A person who makes or causes to be made a telephone solicitation may not: (i) Fail to transmit or cause not to be transmitted: 1. The originating telephone number; and 2. When available by the caller's carrier, the name of the caller to any caller identification service in use by a called party."

64. HomeFix failed to transmit the name of the caller as part of the caller identification information when placing calls and texts to Walker and the Maryland Caller ID Class.

65. This Caller ID service (transmission of the name of the telemarketer) was, on information and belief, available to Window Nation by its carrier.

66. By not transmitting the name of the telemarketer despite this service being available, Defendant has violated the SSCA for each call and text placed by it or on its behalf where the name of the telemarketer was not transmitted as part of the caller identification information.

67. Moreover, nothing in the statute allows a company to circumvent the Caller ID requirements by mentioning the company name in the body of the text message. A consumer need-not open unsolicited text messages in search of the name of the texter. Allowing such an exception is akin to a company circumventing the Caller ID rules for voice calls by announcing themselves upon the call connecting—this is not the rule.

68. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls and text messages on their cellular phones, lost data, and other damages, and, under Md. Code Ann., Comm. Law § 14-4503(a)(2):are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the SSCA. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to the statute, treble the amount of statutory damages recoverable by Plaintiff and the other members of the Maryland Caller ID Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes, and appointing her counsel as Class Counsel;

B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation of Counts I, II, and III ($1,500.00 for each willful violation), whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

D. An order declaring that Defendant's actions, as set out above, were unlawful, knowing and willful, and awarding treble damages;

E. An injunction requiring Defendant to cease all unsolicited and unlawful calling activities, and otherwise protecting the interests of the Classes;

F. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

G. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: June 5, 2026

**CHANCELYN WALKER**, individually
and on behalf of all others similarly situated,

By: /s/ Benjamin H. Carney
One of Plaintiff's Attorneys

Benjamin H. Carney (Fed. Bar No. 27984)
Gordon, Wolf, & Carney, Chtd.
11350 McCormick Road
Executive Plaza 1, Suite 1000
Hunt Valley, Maryland 21031
bcarney@GWCfirm.com
Tel: 410-825-2300
Fax: 410-825-0066

Patrick H. Peluso*
(ppeluso@pelusolawfirm.com)
Peluso Law, LLC
865 Albion St., Suite 250
Denver, Colorado 80220
Telephone: (720) 805-2008

*Counsel for Plaintiff and the Alleged Classes*

**pro hac vice* admission to be filed